Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7527 - 02 C 7619, 02 C 7653, 02 C 7659, 02 C 7706, 02 C 8074, 02 C 8311, 02 C 8707, 02 C 8806, 02 C 9054 & 02 C 9111 | **DATE** | 3/27/2003 |
| **CASE TITLE** | Craig, et al. vs. Sears, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] New Jersey has 10 days within which to answer the questions it did not answer in response to the order of 2/10/03. It may also decide to consider its choice of counsel, or negotiate further with present counsel. If it chooses to do so, a short additional period for it to submit its choice of counsel to court will be granted. New Jersey must also explain within the same period of time the discrepancy discussed in Mr. McCormac's affidavit. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 16 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 28 2003 | 6 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 3/27/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| **ANN S. CRAIG,** on behalf of herself and all others similarly situated, et al.<br><br>Plaintiffs,<br><br>v.<br><br>**SEARS ROEBUCK & CO., ALAN LACY, PAUL J. LISKA, GLENN RICHTER,** and **THOMAS E. BERGMANN,**<br><br>Defendants. | Nos. 02 C 7527<br>02 C 7619<br>02 C 7653<br>02 C 7659<br>02 C 7706<br>02 C 8074<br>02 C 8311<br>02 C 8707<br>02 C 8806<br>02 C 9054<br>02 C 9111<br>(consolidated) |

## MEMORANDUM OPINION AND ORDER

Various actions have been filed pursuant to the Securities Exchange Act of 1934, 15 U.S.C. sec. 78j(b) and 78(t)(a) and Rule 10b-5, against Sears, Roebuck & Co. and several individuals, alleging that Sears falsely represented the health of its business during the class period, in particular by failing to disclose that customer defaults on Sears credit cards had risen dramatically and that the company's reserves were inadequate to account for this risk. Plaintiffs say that when accurate disclosures were made, on October 17, 2002, the price of Sears stock dropped substantially. The first of eleven related actions was filed the following day. The various actions have been consolidated in this court pursuant to 15 U.S.C. sec. 78u-4(a)(3)(B)(ii).



Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), I must appoint a lead plaintiff in these cases. 15 U.S.C. sec. 78u-4(a)(3). Procedurally, as required, plaintiff Ann Craig (plaintiff in the lowest numbered case) within 20 days of filing her action published notice to the purported class informing potential class members of the action and of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. sec. 78u-4(a)(3)(A)(I). Within 60 days thereafter, the Department of the Treasury of the State of New Jersey and its Division of Investment and Market Street Securities, Inc., filed motions seeking appointment as lead plaintiff. Under the PSLRA, presumptively, the lead plaintiff shall be the party with the largest financial interest in the relief sought by the class, assuming that person otherwise satisfies the requirements of Rule 23, Fed. R. Civ. P. 15 U.S.C. sec. 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted by a showing that this party will not fairly and adequately protect the interests of the class or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. sec. 78u-4(a)(3)(B)(iii)(II).

In this case, the party with the largest financial interest is New Jersey, which alleges that its losses in Sears common stock during the class period were more than $17.6 million, far more than the alleged losses of $221,970 claimed by Market Street

2

Securities, the only other plaintiff seeking lead plaintiff status. Market Street Securities[1] argues that New Jersey is nevertheless an inadequate lead plaintiff because of alleged unique defenses that will be asserted against New Jersey. Market Street's principal objection is that New Jersey officials have previously criticized its own Department of Investment, blaming it for losses suffered by the State in the falling stock market of the last two years. The newspaper articles attached to Market Street's objection, upon which it bases this statement, do not specifically refer to the transactions in Sears stock. At any rate, the theory under which these complaints are brought is that Sears issued various press releases and filed financial statements that were materially misleading because they inflated Sears' earnings prospects while failing to disclose excessive customer credit card defaults, thereby engaging in a fraud on the market. In this respect, New Jersey's claims are typical of those of the class, and nothing stated in the referenced newspaper articles seems likely to lead to a unique defense. Market Street also argues that New Jersey has designated a

---

[1] Defendant Sears has also filed objections. The PSLRA, however, specifically provides that members of the plaintiff class may file objections to the designation of a class member as lead counsel. 15 U.S.C. sec. 78u-4(a)(3)(b)(iii)(II). Apart from the questionable motives of a defendant objecting to the inadequacy of a particular plaintiff to lead a class that a defendant presumably wishes defeated, the statutory language would seem to preclude a defendant's objections.

3

retired judge, C. Judson Hamlin, as a "special master" to oversee this litigation on behalf of New Jersey. It argues that this creates various conflicts of interest but I disagree. Nothing in the materials and declarations presented to me lead me to conclude that Mr. Hamlin will therefore become the "de facto class representative" or that his role (really as an attorney with responsibility for keeping New Jersey's Attorney General informed about this case) is improper.

Market Street also argues that the counsel selected by New Jersey, Milberg Weiss Bershad Hynes & Lerach, has a conflict of interest because it has represented Market Street in the past and because it allegedly criticized New Jersey in seeking appointment as lead counsel in another case. I have read the court document submitted by Milberg Weiss in the case in which it seeks lead plaintiff status for its client, and its criticism of New Jersey as the lead plaintiff in that case concerns the fact that one of the defendants is an auditor for New Jersey. I find no conflict between its position there and representation of New Jersey in this case. Neither does Milberg Weiss' representation of New Jersey in this case appear to violate any obligations to its former client, Market Street. See Rules of the United States District Court for the Northern District of Illinois, LR83.51.9.

The last argument raised by Market Street concerns the "secret" contingent fee agreement between Milberg Weiss and New

4

Jersey. That agreement has been filed with the court and is publicly available. The question of fees and counsel chosen by potential lead plaintiff led me to require both parties seeking lead plaintiff status to provide this court with supplementary materials addressing issues that the Securities Exchange Commission suggests should be addressed before designating a lead plaintiff. These are: (1) What procedures did the plaintiff follow to identify a reasonable number of counsel with the skill and ability necessary to represent the class in the pending matter? (2) What procedures did the plaintiff follow in inviting competent counsel to compete for the right to represent the class? (3) What procedures did the plaintiff follow to negotiate a fee and expense reimbursement arrangement that promotes the best interests of the class? (4) On what basis can the plaintiff reasonably conclude that it has canvassed and actively negotiated with a sufficient number of counsel and obtained the counsel that is likely to obtain the highest net recovery to the class? (5) Did the plaintiff make inquiries into the full set of relationships between proposed lead counsel and the plaintiff and other members of the class, and did the plaintiff reasonably conclude either that there are no such relationships or that they did not adversely affect the exercise of the plaintiff's or counsel's fiduciary obligations to the class? "Third Circuit Task Force Report on Selection of Class Counsel," 74 Temple Law

Review 689, 765 (2001) (quoting from SEC Amicus brief in *In re Cendant Corp. Litigation*, 264 F.3d 201, 279 (3d Cir. 2001).

The response from New Jersey, submitted with the affidavit of John E. McCormac, Treasurer of the State of New Jersey, indicates that prior to the time the claims alleged in these lawsuits arose, but apparently anticipating lawsuits under the PSLRA, New Jersey issued a formal solicitation for counsel in securities litigation. That solicitation, made on August 30, 2002, asked for information designed to enable it to select competent counsel in potential litigation. New Jersey apparently chose different counsel for different lawsuits. The information before me does not indicate who the other counsel were or their potential fee agreements.

Mr. McCormac's affidavit raises a question that will undoubtedly be addressed by defendants at some point.[2] In his affidavit he seems to indicate that New Jersey decided to solicit counsel in the summer of 2002 because it believed that a number of corporations "including Sears" may have violated federal securities laws and that it "therefore" put out its August 30 solicitation. For purposes of this motion, I am assuming that

---

[2] I permitted the plaintiffs to file the materials responding to my February 10, 2003 order *in camera*. The materials submitted by New Jersey will be placed in the open court file following this opinion. The submission by Market Street will remain sealed at least for the time being since it is not under present consideration.

New Jersey did not then include Sears in its list of potential defendants because, according to the complaints before me, the alleged deception continued until the middle of October. Under that assumption, the wording of the affidavit is simply a mistake. It may, of course, turn out not to have been mistaken, and certainly there will be discovery on this question. If it was not simply a sloppy or mistaken affidavit in that respect, New Jersey may not be an appropriate class representative at all. However, given the fact that its alleged losses are so much higher than those of any other plaintiff, and that I have been given no reason to believe that New Jersey would have been contemplating an action against Sears in August, 2002 (thus making the likelihood of a simple mistake in the affidavit more likely), I will not disqualify it as lead plaintiff on this basis at this stage. However, New Jersey will be required to submit, within ten days, a supplemental affidavit that explains the apparent contradiction in Mr. McCormac's affidavit on this subject.

The second issue raised by the materials submitted by New Jersey concerns its proposed counsel, Milberg Weiss. The PSLRA permits the lead plaintiff to "select and retain counsel to represent the class" "subject to the approval of the court." 15 U.S.C. sec. 78u-4(a)(3)(B)(v). The courts are divided on the role of the presumptive lead plaintiff's choice of counsel in the

determination of whether the plaintiff should be designated lead plaintiff. The Ninth Circuit recently held that the issue was separate, and that unless the lawyer chosen by the presumptive lead plaintiff is plainly inadequate (a family member, just out of law school, etc.), this should not be much of a consideration in deciding whether to appoint the plaintiff with the highest financial interest in the outcome as lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 732-33 (9th Cir. 2002). In general, the Third Circuit appears to agree. *In re Cendant*, 264 F.3d at 266, *but see* discussion at 275. Various district courts, including Judge Shadur in this district, have disagreed. *E.g., In re Comdisco Securities Litigation*, 141 F. Supp. 2d 951 (N.D. Ill. 2001); 150 F. Supp. 2d 943 (N.D. Ill. 2001). The Seventh Circuit has not yet addressed the question.

In this case there are two questions with respect to New Jersey's choice of counsel. The first concerns the firm itself. While Milberg Weiss is one of the major class action plaintiffs' firms in this country, it has been criticized in this district for its conduct in seeking lead plaintiff status in *In re Comdisco*, 141 F. Supp. 2d at 953-54, and it paid a $54,000,000 judgment in settlement in a case in another court in this district following a jury's finding that it engaged in abuse of process in naming as a defendant Lexecon, Inc. in another case. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 92 C 7768

8

(N.D. Ill. 1999).[3] See 1999 WL 46061 (N.D. Ill. 1999); 1998 WL 808986 (N.D. Ill. 1998).[4] Given Milberg Weiss' size and general standing, I have decided that without more this is not enough to be disqualifying.

The second issue surrounding New Jersey's choice of counsel concerns fees. The retainer agreement between New Jersey and Milberg Weiss provides for a percentage fee recovery depending upon the amount of recovery and the stage of litigation. The percentages vary from a low of 12 percent (before trial and on a settlement greater than $200,000,000) to a high of 20 percent (after trial has begun and for less than a $100,000,000 recovery). Counsel represented in its letter to the state that "the aforesaid fee grid not only represents a significant reduction from the fees typically awarded in a securities fraud class action litigation of this type, but is fair and reasonable under the circumstances of this case." Despite my February order requiring New Jersey to provide me with the procedures it followed to negotiate a fee arrangement that promotes the best interest of the class, it failed to produce any information that

---

[3] The case settled immediately following the jury verdict of $54,000,000, before the submission to the jury of punitive damages.

[4] Milberg Weiss' choice of liaison counsel, Miller Faucher & Cafferty, has also been subject to criticism, having been found to be "almost certainly inadequate" as class counsel in Reynolds v. Beneficial National Bank, 288 F.3d 277, 284 (7th Cir. 2002).

9

would lead me to conclude that it engaged in "hard bargaining" and that the fee agreement is the result of "serious negotiations between the lead plaintiff and the prospective lead counsel." *In re Cendant*, 264 F.3d at 276. Accordingly, I do not know whether New Jersey attempted to or could have engaged Milberg Weiss or other competent counsel at a more competitive rate.

Some available information would indicate that hard bargaining would have produced an agreement that would have been more favorable to the class. The class counsel approved in *In re Comdisco Securities Litigation* agreed on an across-the-board 7.5 percent fee. 150 F. Supp. 2d 943.[5] The fee ultimately agreed upon in *In re Cendant* was 1.7 percent (admittedly of a very high recovery). In his *Comdisco* opinion, Judge Shadur noted that in two previous cases in which he had used a bidding procedure as part of the selection process, the fee award was only 6 percent of the recovery. In *In re Cendant Corp. Prides Litigation*, 243 F.3d 722 (3d Cir. 2001), the court remanded a 5.7 percent fee award that it found was too *high*. That opinion includes a table showing other fee awards, indicating very few as high as the fees stated in the fee agreement between New Jersey and Milberg Weiss. On the other hand, the reasonableness of a fee in terms of

---

[5] That firm, Wolf Haldenstein Adler Freeman & Herz LLC, also represents Market Street Securities in this case.

percentage depends on the amount of recovery as well as the effort required to obtain a judgment or settlement.

Whether the fee set forth in the retainer agreement submitted to this court by New Jersey should be of concern beyond determining whether New Jersey's choice of counsel would indicate that it should not be trusted to fairly and adequately represent the class, see *In re Cendant Corp. Litigation*, 264 F.3d at 275, discussing Judge Shadur's hypothetical situation in *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000), depends on the level of review that will be given any ultimate application for fees. The Ninth Circuit has held that the agreement between counsel and lead plaintiff is at most a cap on fees, and that the district court "has wide latitude to go below the agreed amount in actually awarding fees." *In re Cavanaugh*, 306 F.3d at 733 n.13. On the other hand, the Third Circuit has concluded that under the PSLRA a court "should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *In re Cendant*, 264 F.3d 201. Under this view, more scrutiny up front is clearly required.

I cannot predict what interpretation the Seventh Circuit will give the PSLRA in these circumstances. It seems important that the inquiry not become so detailed at this stage of the case

that discovery and argument become a separate mini-litigation preceding any discovery or litigation on the merits of the case. To avoid that, assuming the Seventh Circuit would agree with the Third and Ninth Circuits that under the PSLRA the court cannot utilize a bidding procedure in the selection of counsel for the class, I think the Ninth Circuit procedure will more efficiently protect the class.[6] However, that does not mean I should, or can, simply accept proposed lead plaintiff's proffer of a retainer agreement without the information required to assess whether New Jersey engaged in appropriate bargaining over its terms or had other choices in counsel that were clearly more reasonable.

New Jersey will be given 10 days to fully answer the questions it did not answer in response to my February 10 order. It may also decide to consider further its choice of counsel, or to negotiate further with present counsel. If it chooses to engage in additional negotiations with present or some other counsel, I will allow a short additional period for it to submit its choice of counsel to the court. However, New Jersey must still explain within this period the discrepancy discussed in Mr.

---

[6] This probably depends on what is meant by the presumption. In both *In re Cendant* and *In re Cendant Corp. Prides Litigation*, the fees actually awarded ended up less than the negotiated fee as a result of post fee petition scrutiny.

McCormac's affidavit and it must answer fully the questions not answered earlier.[7]

ENTER ORDER:

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated:   March 27, 2003

---

[7] I have not discussed the competing lead plaintiff application by Market Street. At this stage, as I understand the PSLRA, I am to determine whether the presumptive lead plaintiff is adequate without a comparison to other potential plaintiffs. I note, however, that there would also be issues that would need to be addressed if Market Street's application were the one under consideration.